**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

2013 APR -9  PM 3: 56

CLERK OF COURT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Applicant, )<br>)<br>vs. )<br>)<br>ANDREW FARMER and )<br>IRIDIUM CAPITAL, LTD., )<br>)<br>Respondents. )<br>) | Misc. Action No.:<br><br>**4-13MC-014-Y** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF THE SECURITIES AND EXCHANGE COMMISSION FOR AN ORDER
<u>COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS</u>**

BRET HELMER
Texas Bar No. 00793931
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: (817) 978-6477
Facsimile: (817) 978-4927
helmerb@sec.gov

Of Counsel:

ERIC WERNER
Texas Bar No. 24033919
NIKOLAY VYDASHENKO
New York Registration No. 4628566
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102

*Attorneys for Applicant United States
Securities and Exchange Commission*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................ ii-iii

I. PRELINIMARY STATEMENT ....................................................................................1

II. STATEMENT OF FACTS ..............................................................................................2

    A. The SEC's Investigation .......................................................................................2

    B. Respondents' Involvement with Chimera .............................................................4

    C. The SEC Temporarily Suspends Trading in Chimera Securities ..........................5

    D. The SEC Serves Administrative Subpoenas on Respondents ..............................5

    E. Respondents Refuse To Comply with the Subpoenas ..........................................6

III. ARGUMENT ....................................................................................................................7

    A. This Court Has Authority and Jurisdiction To Enforce the Subpoenas, and Venue Lies in this District ....................................................................................7

    B. The SEC's Subpoenas Satisfy All Requirements for Enforcement .....................8

        1. The Purpose of the SEC's Investigation Is Legitimate ............................9

        2. The Subpoenas Seek Relevant Information ...........................................10

        3. The SEC Satisfied Applicable Administrative Requirements ...............11

IV. CONCLUSION ..............................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Endicott Johnson Corp. v. Perkins,*
   317 U.S. 501 (1943) .......................................................................................................... 10

*Mazurek v. United States,*
   271 F.3d 226 (5th Cir. 2001) ............................................................................................. 9

*RNR Enterprises, Inc. v. SEC,*
   122 F.3d 93 (2d Cir. 1997) ............................................................................................ 8, 9

*Ruggles v. SEC,*
   567 F. Supp. 766 (S.D. Tex. 1983) .................................................................................. 10

*SEC v. Arthur Young & Co.,*
   584 F.2d 1018 (D.C. Cir. 1978), *cert. denied,* 439 U.S. 1071 (1979) .............................. 9

*SEC v. Brigadoon Scotch Distributing Co.,*
   480 F.2d 1047 (2d Cir. 1973), *cert. denied,* 415 U.S. 915 (1974) ................................... 9

*SEC v. ESM Government Securities, Inc.,*
   645 F.2d 310 (5th Cir. 1981) ............................................................................................. 9

*SEC v. First Security Bank,*
   447 F.2d 166 (10th Cir. 1971) .......................................................................................... 8

*SEC v. Howatt,*
   525 F.2d 226 (1st Cir. 1975) ............................................................................................. 9

*SEC v. Jerry T. O'Brien, Inc.,*
   467 U.S. 735 (1984) ........................................................................................................ 10

*SEC v. Lavin,*
   111 F.3d 921 (D.C. Cir. 1997) .......................................................................................... 8

*SEC v. McCarthy,*
   322 F.3d 650 (9th Cir. 2003) ............................................................................................. 8

*SEC v. OKC Corp.,*
   474 F. Supp. 1031 (N.D. Tex. 1979) ................................................................. 8, 9, 10, 11

*United States v. Morton Salt Co.,*
   338 U.S. 632 (1950) .......................................................................................................... 8

*United States v. Powell,*
   379 U.S. 48 (1964) .................................................................................................9

## FEDERAL STATUTES AND RULES

Section 10(b) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78j(b) ..................................................................................................3

Section 12(k) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78a *et seq* ............................................................................................5

Section 17(a) of the Securities Act of 1933,
   15 U.S.C. § 77q(a) ..................................................................................................3

Section 19(c) of the Securities Act of 1933,
   15 U.S.C. § 77s(c) ..............................................................................................7, 11

Section 20(a) of the Securities Act of 1933,
   15 U.S.C. § 77t(a) ..........................................................................................2, 7, 10

Section 21(a) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78(u)(a) ......................................................................................2, 7, 10

Section 21(b) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78u(b) ........................................................................................7, 10, 11

Section 21(c) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78u(c) ..................................................................................................7

Commission's Rules of Practice and Investigations,
   17 C.F.R. § 201.150(b)-(d) ...................................................................................11

Commission's Rules of Practice and Investigations,
   17 C.F.R. § 201.232(c) ......................................................................................5, 11

Commission's Rules of Practice and Investigations,
   17 C.F.R. § 203.8 ..............................................................................................5, 11

Commission's Rules of Practice and Investigations,
   17 C.F.R. § 240.10b-5 ............................................................................................3

Rule 10b-5 of the Securities Exchange Act of 1934,
17 C.F.R. § 240.10b-53

Applicant United States Securities and Exchange Commission (the "SEC") submits this Memorandum of Law in support of its Motion for an Order Compelling Compliance with Administrative Subpoenas.

## I.   PRELIMINARY STATEMENT

Through this application, the SEC seeks an order compelling Respondents Andrew Farmer ("Farmer") and Iridium Capital, Ltd. ("Iridium") (collectively, "Respondents") to comply with administrative subpoenas issued in the SEC's ongoing investigation relating to a possible fraudulent scheme to manipulate the stock of Chimera Energy Corporation ("Chimera").

Chimera commenced a promotional campaign in late July 2012 that caused a dramatic increase in the trading volume and price of its stock. As part of this campaign, which lasted approximately two and a half months, Chimera issued press releases on a nearly daily basis in which it touted its development of a revolutionary oil drilling technology. Chimera claimed in the press releases that it entered into business relationships and contracts with certain well-known companies related to the use of its technology. The SEC's investigation concerns, among other matters, whether these claims are materially false or misleading and violate the antifraud provisions of the federal securities laws.

Between March and June 2012, before Chimera's shares became available on the public market, entities controlled by Farmer or for which Farmer acted as agent acquired millions of Chimera shares in several private transactions. Iridium, which Farmer also controlled, participated in these transactions by assisting certain of the entities in obtaining stock certificates from Chimera's transfer agent. Around the same time, Farmer facilitated Chimera's transition from a private company to a publicly traded company. Farmer assisted Chimera with registering its public offering with the SEC and with obtaining regulatory approval and broker-dealer

support for Chimera's shares to be traded on a public market. Then, beginning in July 2012, as Chimera's securities became available on the public market and its promotional campaign was under way, entities controlled by Farmer sold to the public a substantial number of Chimera shares they obtained in private transactions, generating hundreds of thousands, if not millions, of dollars in profits. In October 2012, the SEC halted the promotional campaign by temporarily suspending trading in Chimera securities because of suspicions concerning the accuracy of Chimera's public statements.

In furtherance of its investigation, the SEC issued and served administrative subpoenas on Respondents seeking production of documents related to, among other things, transactions in Chimera securities. Respondents, however, have brazenly disregarded their legal obligation to comply with the subpoenas. Respondents have not provided a reason for their noncompliance and have not articulated any objections to the subpoenas.

Accordingly, the SEC now requests that this Court order Respondents to do what they should already have done without the threat of being held in contempt and the concomitant waste of judicial resources – to produce documents in response to the lawfully issued subpoenas.

## II. STATEMENT OF FACTS

### A. The SEC's Investigation

The SEC's investigation, captioned *In the Matter of Chimera Energy Corporation*, is being conducted pursuant to an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order"), which the SEC issued on October 23, 2012 pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(a), and Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(a). (Declaration of Nikolay Vydashenko dated April 9, 2013 ("Vydashenko Decl.") ¶ 4.) The

Formal Order directs that a private investigation be conducted to determine, among other things, whether any persons have violated the antifraud provisions of the federal securities laws.[1] (*Id.* ¶ 5.) Specifically, an aspect of the SEC's investigation concerns whether Chimera's public statements relating to its technology and purported business relationships, among other matters, are misleading. (*Id.*) The Formal Order designates certain members of the SEC staff as officers of the SEC, and authorizes the designated officers to subpoena witnesses, compel their attendance, take evidence, and require the production of records deemed by the SEC or its designated officers to be relevant to the investigation. (*Id.* ¶ 6.)

The SEC's investigation uncovered that beginning in or around July 2012 and continuing through at least October 2012, Chimera embarked on an aggressive promotional campaign, issuing over thirty press releases touting its purported licensing and development of a new "non-hydraulic extraction" ("NHE") technology that allegedly enables extraction of oil from shale formations without the use of water, thus alleviating perceived environmental consequences of shale fracturing that uses water (*i.e.*, hydraulic fracturing). (*Id.* ¶ 8.) Chimera claimed in its press releases, as well as in reports filed with the Commission on Form 8-K, that it had entered into business relationships with certain well-known and established companies in connection with the use of NHE. (*Id.*) At least one such company issued a press release denying the existence of any business relationship with Chimera. This company also filed a lawsuit against Chimera and its former CEO, in which it sought and obtained a permanent injunction precluding Chimera from asserting the existence of any relationship with the company without the company's express written consent. (*Id.* ¶ 9.)

---

[1] The antifraud provisions of the federal securities laws identified in the Formal Order are Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 15 U.S.C. §77q(a). (Vydashenko Decl. ¶ 5.)

Chimera's promotional campaign appears to have been effective, as it coincided with a sharp increase in the price and trading volume of Chimera securities. (*Id.* ¶ 10.) Chimera's securities were sold to the public through quotations on the OTC Bulletin Board and OTC Link (collectively, the "OTC").[2] (*Id.* ¶ 3.)

### B. Respondents' Involvement with Chimera

Before Chimera's securities became eligible to be traded on the OTC, Farmer arranged for several entities that he controlled or for which he acted as agent to acquire millions of Chimera shares in private transactions at the price of $0.025 per share. (*Id.* ¶ 12.) In some instances, domestic entities Farmer controlled acquired these shares. (*Id.* ¶ 13.) In other instances, certain foreign companies that Farmer either controlled or for which he acted as agent acquired the shares. (*Id.*) Iridium, which Farmer also controlled, assisted these foreign companies in obtaining from Chimera's transfer agent stock certificates for the shares they acquired. (*Id.*) Farmer represented to Chimera's transfer agent that the foreign companies that acquired Chimera's shares were "clients" of Iridium. (*Id.*) The SEC's investigation has discovered that securities purchased by entities controlled by Farmer and "clients" of Iridium account for approximately eighty percent of Chimera securities that were eligible to be sold to the public. (*Id.* ¶ 14.)

In addition to amassing millions of shares of Chimera securities in private transactions, Farmer played an integral role in facilitating the process that resulted in Chimera securities being traded on the OTC. According to Chimera's written response to an inquiry from the Financial Industry Regulatory Authority ("FINRA"), Farmer advised Chimera's now former CEO, who is

---

[2] OTC Bulletin Board and OTC Link are electronic quotation systems that display real-time quotes for certain over-the-counter securities that are not listed on a national securities exchange. To be eligible for quotation on the OTC Bulletin Board, an issuer must file current financial reports with the SEC.

a longtime friend of Farmer, regarding the process of filing Chimera's Registration Statement with the SEC. (*Id.* ¶ 16.) After Chimera filed its Registration Statement, Farmer introduced Chimera and its former CEO to a brokerage firm, and induced that firm to apply for regulatory approval to initiate quotations of Chimera securities on the OTC and to act as a "market maker" of Chimera securities. (*Id.*) These actions enabled Chimera securities to be traded on a liquid public market. Once approved for trading on the OTC, Chimera initiated its promotional campaign, driving its stock to trade at a high of $2.00 per share. (*Id.* ¶ 10.) Chimera's listing on the OTC and its effective promotional campaign positioned entities controlled by Farmer and "clients" of Iridium to reap millions of dollars in profits by selling Chimera securities acquired at $0.025 per share in private transactions at significantly higher prices to the public.

C. **The SEC Temporarily Suspends Trading in Chimera Securities**

On October 25, 2012, the SEC temporarily suspended trading in the securities of Chimera, pursuant to Section 12(k) of the Securities Exchange Act, 15 U.S.C. § 78a *et seq.* (*See* Securities Exchange Act of 1934 Release No. 68103, Vydashenko Decl. Ex. A) Trading was suspended temporarily because of questions concerning the accuracy and adequacy of publicly disseminated information about, among other things, statements by Chimera about the company's business prospects and agreements. (Vydashenko Decl. ¶ 18 and Ex. A.)

D. **The SEC Serves Administrative Subpoenas on Respondents**

Based on the information uncovered in the course of its investigation, on December 5, 2012, the SEC staff issued to Farmer a subpoena *duces tecum* and *ad testificandum*, dated December 5, 2012. (Vydashenko Decl. ¶ 19 and Vydashenko Decl. Ex. B.) The subpoena was issued pursuant to the Formal Order and the SEC's Rules of Practice and Investigations, 17 C.F.R. §§ 203.8, 201.232(c), and 201.150(c)(2). The SEC staff served the subpoena on Farmer

by mailing it via UPS to Farmer's residence in Houston, Texas. (Vydashenko Decl. ¶ 19.) The subpoena required Farmer to produce responsive documents by December 20, 2012, and to appear on January 23, 2013 to provide sworn testimony to the SEC staff. (*Id.* ¶ 20.) The subpoena to Farmer required production of documents related to, among other things, Farmer's dealings with Chimera, Chimera's business, and Farmer's transactions in Chimera securities. (*Id.* ¶ 20 and Ex. B at 2-3.)

Also on December 5, the SEC staff issued to Iridium a subpoena *duces tecum*, dated December 5, 2012. (Vydashenko Decl. ¶ 21 and Vydashenko Decl. Ex. C.) The SEC staff served the subpoena on Iridium by mailing it via UPS to the attention of Farmer, who is Iridium's registered agent for service of process in Texas. (Vydashenko Decl. ¶ 21.) The subpoena required Iridium to produce responsive documents by December 20, 2012. (*Id.* ¶ 22.) The subpoena to Iridium required production of documents relating to, among other things, the ownership of Iridium, Iridium's dealings with Chimera, and Iridium's relationship with foreign entities that acquired Chimera securities (*i.e.*, Iridium's "clients"). (*Id.* ¶ 22 and Ex. C at 2-3.)

E.  **Respondents Refuse To Comply with the Subpoenas**

One day after the expiration of the deadline for Respondents to produce documents, Respondents' counsel contacted the SEC staff for the first time and requested a nearly one month extension to produce documents, citing Farmer's travel to a foreign nation as the basis for the request. (Vydashenko Decl. ¶ 24.) The SEC staff agreed to extend the response deadline to January 18, 2013. (*Id.* ¶ 25.) On January 22, 2013, Respondents' counsel informed the SEC staff that Farmer decided not to respond to the SEC's subpoena. (*Id.*) Counsel did not provide any reasons for Farmer's noncompliance, and did not voice any objections to the subpoena to Farmer. (*Id.*) On February 8, 2013, Respondents' counsel confirmed to the SEC staff that

Iridium, like Farmer, would not respond to the subpoena issued to it. (*Id.* ¶ 26.) Counsel did not provide any reasons for Iridium's noncompliance or voice any objections to the subpoena to Iridium. (*Id.*)

## III. ARGUMENT

### A. This Court Has Authority and Jurisdiction To Enforce the Subpoenas, and Venue Lies in this District

Congress granted the SEC broad authority to conduct investigations and demand production of evidence relevant to its investigations. *See* Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Section 21(a) and (b) of the Exchange Act, 15 U.S.C. § 78u(a) and (b). The SEC and officers it designates are empowered, among other things, to administer oaths, subpoena witnesses, and compel their testimony and attendance. *See* Section 19(c) of the Securities Act, 15 U.S.C. §77s(c); Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b). When a subpoenaed party refuses to comply with a subpoena issued by the SEC, as Respondents have done here, the SEC has the authority to seek a court order enforcing the subpoena by compelling compliance. *See* Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).[3] Congress explicitly conferred jurisdiction on the United States District Courts to enforce subpoenas upon application by the SEC. *Id.* Accordingly, this Court has jurisdiction over the subject matter of the instant application.

Venue is proper in this district because Congress authorized the SEC to bring subpoena enforcement actions in any United States District Court "within the jurisdiction of which such investigation or proceeding is carried on." *Id.* Here, the investigation is being conducted by staff

---

[3] Section 21(c) of the Exchange Act provides, in relevant part, that

> In case of . . . refusal to obey a subpoena issued to any person, the [SEC] may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on . . . . And such court may issue an order requiring such person . . . to produce records . . . and any failure to obey such order may be punished by such court as a contempt thereof.

15 U.S.C. § 78u(c).

in the SEC's Fort Worth Regional Office, and the subpoena was issued in Fort Worth, Texas. (Vydashenko Decl. ¶¶ 7, 23.)

Furthermore, this Court has authority to adjudicate the SEC's application in a summary proceeding. *See SEC v. McCarthy*, 322 F.3d 650, 658 (9th Cir. 2003) (noting that summary proceedings are appropriate for SEC subpoena enforcement actions). Accordingly, the SEC requests that the Court promptly hear and rule on the SEC's application so that its investigation is not further delayed. *See SEC v. First Security Bank*, 447 F.2d 166, 168 (10th Cir. 1971) ("Questions concerning agency subpoenas should be promptly determined so that the subpoenas, if valid, may be speedily enforced"); *see also SEC v. Lavin*, 111 F.3d 921, 926 (D.C. Cir. 1997) (noting that subpoena enforcement actions "are generally summary in nature and must be expedited").

**B.     The SEC's Subpoenas Satisfy All Requirements for Enforcement**

"It is well established that the scope of an administrative agency's investigatory power is broad." *SEC v. OKC Corp.*, 474 F. Supp. 1031, 1034 (N.D. Tex. 1979) (Higginbotham, J.). The Supreme Court has compared a United States government agency inquiry to that of a grand jury, which can investigate without probable cause, but "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).

Conversely, "[t]he courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enterprises, Inc. v. SEC*, 122 F.3d 93, 96 (2d Cir. 1997) (internal quotations omitted). A court enforces an administrative agency's investigative subpoena if (1) the investigation is conducted pursuant to a legitimate purpose, (2) the subpoena seeks information that may be relevant to the purpose, and (3) the subpoena was issued in accordance

with applicable administrative procedures. *See SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975).[4] The agency's burden in satisfying this test is "slight" or "minimal," and the agency's "minimal burden . . . can be fulfilled by a simple affidavit of the . . . agent issuing the summons." *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001) (internal quotations and citation omitted) (enforcing IRS summons.). As demonstrated below, here the SEC has satisfied all requirements for enforcement.

Once an agency satisfies these threshold criteria, the burden shifts to the respondent to establish that the subpoena is unreasonable. *See SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024, 1034 n.139 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1071 (1979); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973), *cert. denied*, 415 U.S. 915 (1974); *OKC Corp.*, 474 F. Supp. at 1036. When the SEC's inquiry is legally authorized and the information sought is relevant to the inquiry, the burden of showing unreasonableness "is not easily satisfied." *OKC Corp.*, 474 F. Supp. at 1036 (citing *Brigadoon Scotch*, 480 F.2d at 1056).

### 1. The Purpose of the SEC's Investigation Is Legitimate

The SEC staff is conducting this investigation pursuant to the Formal Order, which authorizes designated officers of the SEC to investigate, among other things, whether violations of the antifraud provisions of the Securities Act and the Exchange Act have occurred. (Vydashenko Decl. ¶ 5.) This purpose is "Congressionally authorized," because Congress empowered the SEC "to conduct investigations to determine whether any person has violated or is about to violate the securities laws." *OKC Corp.*, 474 F. Supp. at 1034-35 (holding that purpose of SEC investigation was legitimate where investigation was conducted pursuant to SEC's order authorizing

---

[4] *See also United States v. Powell*, 379 U.S. 48, 57-58 (1964) (establishing similar test governing enforcement of Internal Revenue Service ("IRS") summons); *SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 313 n.3 (5th Cir. 1981) (noting that standards of IRS summons enforcement cases, including *Powell*, apply generally to SEC subpoena enforcement cases); *OKC Corp.*, 474 F. Supp. at 1034-36 (applying *Powell* standards to SEC subpoena enforcement action).

investigation to determine whether issuer violated antifraud and reporting requirements of the Exchange Act); *see* Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Section 21(a) of the Exchange Act, 15 U.S.C. §78(u)(a).[5] Accordingly, the SEC is conducting this investigation pursuant to a lawfully authorized and legitimate purpose.

### 2. The Subpoenas Seek Relevant Information

An agency's subpoena seeks relevant information when such information is not "'plainly incompetent or irrelevant to any lawful purpose.'" *OKC Corp.*, 474 F. Supp. at 1036 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). Because Congress authorized the SEC to subpoena documents that it deems "relevant or material to the inquiry," 15 U.S.C. § 78u(b), "a court should be reluctant to declare the subpoenaed documents irrelevant," unless the subpoena "on its face" seeks documents that "do not pertain to the official subject of the investigation." *OKC Corp.*, 474 F. Supp. at 1036; *see also Ruggles v. SEC*, 567 F. Supp. 766, 768 (S.D. Tex. 1983) (federal securities laws empower the SEC "to subpoena any records which it deems relevant, and the courts are to permit inquiries to whatever extent is necessary to make effective this power of investigation.").

Here, the information the SEC seeks from Respondents satisfies the relevance standard. The purpose of the SEC's investigation is to determine whether any person violated the antifraud and other provisions of the federal securities laws in connection with the purchase and sale of Chimera securities. (Vydashenko Decl. ¶ 5.) The subject subpoenas seek, among other items, brokerage statements, bank account statements, documents relating to acquisition and disposition of stock, and communications relating to Respondents' relationship with Chimera and with entities

---

[5] *See also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) ("Congress has vested the [SEC] with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations.").

that acquired Chimera securities. (*Id.* ¶¶ 20, 22.) Far from being "plainly incompetent" or "irrelevant," the documents that the subpoenas require to be produced are squarely germane to the purpose of the SEC's investigation because they may shed light on whether any provisions of the federal securities laws were violated.

### 3. The SEC Satisfied Applicable Administrative Requirements

Finally, the SEC staff issued and served the administrative subpoenas in accordance with the applicable administrative requirements. The federal securities laws authorize the SEC to designate officers and empower them, among other things, to subpoena witnesses, to compel their attendance, to take evidence, and to require the production of any books, papers, or other documents that the SEC deems relevant or material to its investigation. *See* Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b). Here, a staff attorney who was designated in the Formal Order as an officer of the SEC for purposes of this investigation issued each of the subpoenas to Respondents. (Vydashenko Decl. ¶¶ 6, 19, 21.) The SEC staff properly served the subpoenas on Respondents by sending subpoenas via UPS.[6] (*Id.* ¶¶ 19, 21.) Accordingly, the SEC's subpoenas satisfy applicable administrative procedures. *See OKC Corp.*, 474 F. Supp. at 1036 (holding that the SEC complied with applicable laws where it issued subpoena "pursuant to an agency order authorizing a legitimate agency investigation").

---

[6] *See* 17 C.F.R. § 203.8 (providing that service of subpoenas issued in informal investigative proceedings shall be effected in the manner prescribed by 17 C.F.R. § 201.232(c)); 17 C.F.R. § 201.232(c) (providing that service shall be made pursuant to the provisions of 17 C.F.R. § 201.150(b)-(d)); 17 C.F.R. § 201.150(b)-(d) (providing for multiple methods of service, including service by a commercial courier service or express delivery service).

## IV. CONCLUSION

For the foregoing reasons and those stated in the SEC's Motion for Order Compelling Compliance with Administrative Subpoenas, the SEC respectfully requests that the Court grant the Motion and enter an Order compelling Respondents to comply with the SEC's administrative subpoenas.

Dated: April 9, 2013

Respectfully submitted,

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

_____
BRET HELMER
Texas Bar No. 00793931
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: (817) 978-6477
Facsimile: (817) 978-4927
helmerb@sec.gov

Of Counsel:

ERIC WERNER
Texas Bar No. 24033919
NIKOLAY VYDASHENKO
New York Registration No. 4628566
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102

*Attorneys for Applicant United States Securities and Exchange Commission*

# CERTIFICATE OF SERVICE

On April 9, 2013, I served the (1) the Motion of the Securities and Exchange Commission Compelling Compliance with Administrative Subpoenas, (2) the Memorandum of Law in Support of the Motion of the Securities and Exchange Commission Compelling Compliance with Administrative Subpoenas, (3) the Declaration of Nikolay Vydashenko, dated April 9, 2013, and exhibits thereto, and (4) the Proposed Order by mailing the foregoing documents via UPS overnight delivery to:

**Andrew Farmer**
**5005 Hidalgo St. Unit 619**
**Houston, TX  77056-6425**

**Iridium Capital, Ltd.**
**Attn:  Andrew Farmer**
**5847 San Felipe St., 17th Floor**
**Houston, TX  77057**

With a courtesy copy via UPS overnight delivery to:

**Steven Rosen, Esq.**
**214 Morton Street**
**Richmond, TX  77469**

_____
Bret Helmer