UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Applicant, )<br>)<br>vs. )<br>)<br>ANDREW FARMER and )<br>IRIDIUM CAPITAL, LTD., )<br>)<br>Respondents. )<br>) | 4-13MC-014-Y<br><br>Misc. Action No.: |

## DECLARATION OF NIKOLAY VYDASHENKO IN SUPPORT OF MOTION FOR AN ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

1. I am an attorney in the Division of Enforcement of the United States Securities and Exchange Commission (the "SEC").

2. I submit this declaration in support of the SEC's Motion for an Order Compelling Compliance with Administrative Subpoenas. I have personal knowledge of the statements in this declaration, either through direct involvement in, or knowledge of, the SEC's investigation captioned *In the Matter of Chimera Energy Corporation*, SEC File No. FW-03772.

**The SEC's Investigation**

3. In or about October 2012, the SEC staff became aware of complaints concerning potential manipulation of the stock of Chimera Energy Corporation ("Chimera"). Chimera's securities were sold to the public through over-the-counter trading and quotation systems known as OTC Bulletin Board and OTC Link (collectively, the "OTC").

4. On October 23, 2012, pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(a), and Section 21(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. § 8u(a), the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in the investigation captioned *In the Matter of Chimera Energy Corporation*.

5. The Formal Order directs that a private investigation be conducted to determine, among other things, whether any persons have violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 15 U.S.C. §77q(a). The SEC's investigation concerns, among other matters, whether Chimera's public statements relating to its technology and purported business relationships are misleading.

6. The Formal Order designates me and certain other members of the SEC staff as officers of the SEC, and authorizes the designated officers to subpoena witnesses, compel their attendance, take evidence, and require the production of records deemed by the SEC or its designated officers to be relevant to the investigation.

7. The investigation authorized by the Formal Order is being conducted by the SEC staff in the Fort Worth Regional Office. Because the investigation is ongoing, confidential, and non-public, the SEC has not attached a copy of the Formal Order as an exhibit hereto. If requested by the Court, the SEC will provide a copy of the Formal Order for the Court's review *in camera*.

**Possible Fraudulent Scheme to Manipulate Chimera's Stock**

*Chimera's Promotional Campaign*

8. Beginning in or around July 2012 and continuing through at least October 2012, Chimera issued over thirty press releases touting its purported licensing and development of a new "non-hydraulic extraction" ("NHE") technology. According to Chimera, this technology

2

enables extraction of oil from shale formations without the use of water, thus alleviating perceived environmental consequences of shale fracturing that uses water (*i.e.*, hydraulic fracturing). Chimera claimed in its press releases, as well as in reports filed with the SEC on Form 8-K, that it entered into business relationships and contracts with certain well-known companies related to the use of its NHE technology.

9. At least one company identified in Chimera's press releases issued its own press release denying the existence of any business relationship with Chimera. This company also filed a lawsuit against Chimera and its former CEO, in which it sought and obtained a permanent injunction precluding Chimera from asserting the existence of any relationship with the company without the company's express written consent.

10. Chimera's promotional campaign coincided with a sharp increase in the price and trading volume of Chimera securities, which traded at a high of $2.00 per share.

*Involvement of Respondents Andrew Farmer and Iridium Capital, Ltd.*

11. Respondent Andrew Farmer ("Farmer") resides in Houston, Texas. Respondent Iridium Capital, Ltd. ("Iridium") is incorporated in Louisiana. Iridium is registered as a foreign corporation with the Texas Secretary of State. Farmer is the registered agent of Iridium in Texas, and Farmer controlled Iridium at all relevant times.

12. In the course of its investigation, the SEC staff has obtained information reflecting that between March and June 2012, Farmer arranged for several entities that he controlled or for which he acted as agent to acquire millions of Chimera shares in private transactions at the price of $0.025 per share.

13. In some instances, domestic entities Farmer controlled acquired these shares. In other instances, certain foreign companies that Farmer either controlled or for which he acted as

3

agent acquired the shares. Iridium assisted the foreign companies in obtaining from Chimera's transfer agent stock certificates for the shares acquired by the foreign companies. Farmer represented to Chimera's transfer agent that the foreign companies were "clients" of Iridium.

14. The SEC staff has received information reflecting that securities purchased by entities controlled by Farmer and "clients" of Iridium account for approximately eighty percent of Chimera securities that were eligible to be sold to the public.

15. In addition to directing the acquisition of millions of shares of Chimera securities in private transactions, Farmer also participated in the process that enabled Chimera to become a publicly traded company.

16. According to Chimera's written response to an inquiry from the Financial Industry Regulatory Authority ("FINRA"), an independent self-regulatory organization, Farmer advised Chimera's now former CEO, who is a longtime friend of Farmer, regarding the process of filing Chimera's Registration Statement with the SEC. After Chimera filed its Registration Statement, Farmer introduced Chimera and its former CEO to a brokerage firm, and induced that firm to apply for regulatory approval to initiate quotations of Chimera securities on the OTC and to act as a "market maker" of Chimera securities. The brokerage firm applied for and received approval to initiate quotations, and made a market in Chimera securities.

17. As Chimera's promotional campaign was under way, entities controlled by Farmer sold millions of Chimera shares to the public on the OTC at prices significantly higher than the $0.025 per share at which these entities purchased their shares.

**Suspension of Trading in Chimera Securities**

18. On October 25, 2012, the SEC temporarily suspended trading in the securities of Chimera, pursuant to Section 12(k) of the Securities Exchange Act, 15 U.S.C. § 78a *et seq*. A

true and correct copy of the SEC's Securities Exchange Act of 1934 Release No. 68103, which announced the trading suspension, is attached hereto as Exhibit A. Trading was suspended temporarily because of questions concerning the accuracy and adequacy of publicly disseminated information about, among other things, statements by Chimera about the company's business prospects and agreements.

**The Administrative Subpoenas**

19. On December 5, 2012, I issued to Farmer a subpoena *duces tecum* and *ad testificandum*, dated December 5, 2012. A true and correct copy of the subpoena to Farmer is attached hereto as Exhibit B. The SEC staff served the subpoena on Farmer by mailing it via UPS to Farmer's residence in Houston, Texas.

20. The subpoena required Farmer to produce responsive documents by December 20, 2012, and to appear on January 23, 2013 to provide sworn testimony to the SEC staff. The subpoena required production of documents related to, among other things, Farmer's dealings with Chimera, Chimera's business, and Farmer's transactions in Chimera securities. (Ex. B at 2-3.)

21. Also on December 5, I issued to Iridium a subpoena *duces tecum*, dated December 5, 2012. A true and correct copy of the subpoena to Iridium is attached hereto as Exhibit C. The SEC staff served the subpoena on Iridium by mailing it via UPS to the attention of Andrew Farmer, who is Iridium's registered agent for service of process in Texas.

22. The subpoena required Iridium to produce responsive documents by December 20, 2012. The subpoena to Iridium required production of documents relating to, among other things, the ownership of Iridium, Iridium's dealings with Chimera, and Iridium's relationship with foreign entities that acquired Chimera securities (*i.e.*, Iridium's "clients"). (Ex. C at 2-3.)

23. I issued the subpoenas to Farmer and Iridium from the SEC's Fort Worth Regional Office.

**Respondents' Refusal To Comply with the Administrative Subpoenas**

24. On or about December 21, 2012, Respondents' counsel contacted me for the first time and requested that I extend to January 18, 2013 Respondents' deadline to produce documents responsive to the subpoenas. Respondents' counsel cited Farmer's travel to a foreign nation as the reason for the request.

25. I agreed to extend the response deadline to January 18, 2013. On January 22, 2013, Respondents' counsel informed me telephonically that Farmer had decided not to respond to the SEC's subpoena. Counsel did not provide any reasons for Farmer's noncompliance, and did not voice any objections to the subpoena to Farmer.

26. On February 8, 2013, Respondents' counsel confirmed to me telephonically that Iridium, like Farmer, would not respond to the subpoena issued to it. Counsel did not provide any reasons for Iridium's noncompliance, and did not voice any objections to the subpoena to Iridium.

27. On March 19, 2013, together with SEC trial attorney Bret Helmer, I spoke telephonically to counsel for Respondents. During this conversation, the SEC staff provided Respondents a final opportunity to comply with the subpoenas to avoid the necessity of filing the instant application. Counsel for Respondents informed the SEC staff that Respondents' position with respect to their refusal to respond to the subpoenas had not changed, and would not change based on the SEC's staff's stated intent to file a subpoena enforcement action. Counsel did not provide any reasons for Respondents' noncompliance, and did not voice any objections to the subpoenas.

28.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 9th day of April, 2013.

_____
Nikolay Vydashenko